UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL GEARY WILSON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COUNTY OF CONTRA COSTA, et al.,<br><br>　　　　Defendants. | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS<br><br>Case No. 14-cv-03491-SI<br><br>Docket Nos. 67, 90, 91 |

Currently before the Court are defendants' motions to dismiss, Docket Nos. 67, 90, 91, which for the reasons set forth below, the Court GRANTS in part and DENIES in part.

**BACKGROUND**

In his first amended pro se complaint, plaintiff alleges as follows. On February 2, 2014, at or about 6:10 a.m., plaintiff entered the lobby of the 24-hour Contra Costa County Sheriff's Office (CCCSO). First Amended Complaint (FAC) ¶¶ 24, 27. Plaintiff picked up a white phone at a public service window and told the CCCSO employee who answered the phone that he needed to report some crimes and requested medical attention, asking her to call 911. *Id*. ¶ 27. The employee then contacted defendant Kelly Challand. *Id*. Challand summoned defendant deputy sheriff Chad MacDonald to confirm plaintiff's identity. *Id*. ¶ 28. MacDonald offered to let plaintiff sit down in a nearby chair, which plaintiff refused. *Id*. ¶ 29. According to plaintiff, MacDonald did not offer him the medical attention he requested nor did he call 911. *Id*. Plaintiff handed MacDonald a report and request regarding alleged crimes committed by Anthony

Piscitelli.[1]  *Id*.  Plaintiff alleges that Challand and MacDonald then physically blocked plaintiff from exiting the chair in which he was seated and Challand told plaintiff to leave or he would arrest him for trespassing.  *Id*. ¶ 30.  Plaintiff alleges that Challand refused to call 911 for him and ignored his statements that he was having trouble walking and standing.  *Id*.

At or about 6:26 a.m., Challand noticed that plaintiff had an audio recorder and was actively recording.  *Id*. ¶35.  Challand seized the recorder, arrested plaintiff, and MacDonald searched plaintiff's person.  *Id*.  Plaintiff alleges that Challand, MacDonald, and three other Doe defendants used excessive force upon him, causing him pain, nerve damage, scars, and bruises.  *Id*. ¶ 36.  At or about 6:28 a.m. Challand stated to other CCCSO employees that plaintiff "is a nut job."  *Id*. ¶ 39.  At or about 6:30 a.m., Challand told defendant Matthew Schuler that dispatch said plaintiff needed a mental health arrest.  *Id*. ¶ 41.  At or about 6:31 a.m. defendant Schuler said to everyone in the area, "Evidently, [Plaintiff is] crazy."  *Id*.  ¶ 42.

At or about 6:32 a.m., Challand and other defendants searched plaintiff's property.  *Id*. ¶ 43.  Plaintiff alleges that Schuler ordered a Doe defendant to run plaintiff's name through ARIES, a database containing information about people with mental disorders.  *Id*. ¶ 44.  Defendant Jarred Pereira read part of plaintiff's victim/witness report and discussed with others some of the alleged crimes perpetrated by Anthony Piscitelli.  *Id*.  During this period, defendants kept plaintiff in a glass-enclosed room; according to plaintiff, Pereira ignored plaintiff's requests for immediate medical attention as well as his complaints that the handcuffs on his wrists were causing pain and numbness in his hands.  *Id*. ¶ 55.

Plaintiff alleges that defendants put him in an overcrowded group cell for approximately 24 hours, during which he complained about the conditions and begged repeatedly for water, but defendants did nothing to help him.  *Id*. ¶ 63.  At or about 3:15 p.m. defendant Michael Elder conducted a 5150 evaluation of plaintiff.  *Id*. ¶ 68.  Plaintiff alleges that Elder falsified medical records with false reference to a report from a lobby aid, and a fraudulent diagnosis of mental disorder.  *Id*.  Plaintiff further alleges Elder unlawfully searched his medical records and disclosed

---

[1] Plaintiff describes Piscitelli as a process server associated with Contra Costa County.  FAC ¶ 23.

to other defendants the content of his interview with plaintiff. *Id*. Plaintiff was released at or about 5:45 a.m. on February 3, 2014. *Id*. ¶ 76. On February 5, 2014, plaintiff and his attorney met with defendant Ronald Hoekwater to file a confidential internal affairs complaint regarding the alleged wrongdoings of defendants. *Id*. ¶ 83. Plaintiff alleges that Hoekwater has not kept the complaint confidential and has published false accusations that plaintiff committed crimes related to recording conversations. *Id*.

On August 1, 2014, plaintiff filed the initial complaint in this case. Docket No. 1. Defendants moved to dismiss plaintiff's initial complaint, which the Court did in part, with leave to amend. Docket Nos. 24, 27, 52. Plaintiff has added twenty-seven new claims in his first amended complaint, and defendants now move to dismiss the first amended complaint.

**LEGAL STANDARD**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. Pro. 8(a)(2) and a complaint that fails to do so is subject to dismissal pursuant to Rule 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a Defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 557). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*.

In reviewing a Rule 12(b)(6) motion, a district court must accept as true all facts alleged in the complaint, and draw all reasonable inferences in favor of the plaintiff. *See al-Kidd v. Ashcroft*,

3

580 F.3d 949, 956 (9th Cir. 2009). However, a district court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). If the Court dismisses a complaint, it must decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

In the Ninth Circuit, courts "construe *pro se* filings liberally when evaluating them under *Iqbal*. While the standard is higher, our 'obligation' remains, 'where the petition is *pro se*, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt.'" *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (quoting *Bretz v. Kelman*, 773, F.2d 1026, 1027 n. 1 (9th Cir. 1985) (*en banc*)). However, a court will not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). The district court must provide the *pro se* plaintiff notice of the deficiencies of his or her complaint prior to dismissal, but a *pro se* plaintiff must still allege facts sufficient to allow the reviewing court to conclude a claim has been stated. *Ferdik v. Bonzelet*, 963 F.3d 1258, 1261 (9th Cir. 1992); *Ivey v. Bd. of Regents of Univ. of Alaska,* 673 F.3d 266, 269 (9th Cir. 1982).

## DISCUSSION

### I.      42 U.S.C. § 1983

Plaintiff has alleged claims against all individual defendants under Section 1983 for violations of his First, Fourth, and Fourteenth Amendment rights.[2] Defendants move to dismiss all of plaintiff's Section 1983 claims.

---

[2] In his initial complaint plaintiff alleged violations of his First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights.

4

### A. Fourth Amendment

Plaintiff alleges his Fourth Amendment rights were violated in three ways: (1) unlawful arrest and seizure; (2) excessive force; and (3) warrantless searches.[3] Defendants contend that the allegations contained in plaintiff's complaint show that there was probable cause to arrest and search him, and that the use of force was reasonable as a matter of law. Defendants further argue that even if there was no probable cause to arrest plaintiff, the defendants are entitled to qualified immunity as to any violations of plaintiff's Fourth Amendment rights.

#### 1. Unlawful Arrest

"Under the Fourth Amendment, a warrantless arrest requires probable cause." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). There is probable cause when, "under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime." *Id.* (quoting *United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986)). "[A] warrantless arrest satisfies the Constitution so long as the officer has 'probable cause to believe that the suspect has committed or is committing an offense.'" *Virginia v. Moore*, 553 U.S. 164, 173 (2008) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979)).

Defendants contend that plaintiff's allegations provide facts that would lead a reasonable officer to believe that plaintiff was trespassing on public property in violation of California Penal Code section 602.1(b). Under section 602.1(b), any person who intentionally interferes with any lawful business carried on by employees of a public agency open to the public by obstructing those attempting to carry on business and who refuses to leave the premises after being requested to leave by a supervisor of the public agency is guilty of a misdemeanor. Cal. Penal Code § 602.1(b).

Plaintiff's complaint alleges that while interacting with defendants Challand and

---

[3] From plaintiff's initial complaint, it was unclear whether his claims pertained to his arrest or the 5150 evaluation. Plaintiff has clarified his position in this first amended complaint, specifying that his Fourth Amendment claims arise from his arrest.

5

MacDonald in the public lobby of the CCCSO, MacDonald offered to let him sit down in a chair. FAC ¶ 29. The complaint states that Challand and MacDonald physically blocked plaintiff from exiting the chair. *Id*. ¶ 30. Challand said to plaintiff, "Now get outta here! I'm gonna arrest you for trespassing!" but Challand, MacDonald, and two or three defendant Does simultaneously surrounded plaintiff and physically blocked him from leaving his seat. *Id*. ¶¶ 30-31. Plaintiff further alleges that he repeatedly stated to defendants that he was having trouble standing and walking and so he remained seated and asked them for help. *Id*. According to plaintiff, he was arrested when Challand noticed his Olympus Recorder was actively recording. *Id*. ¶ 35. MacDonald then conducted a search of plaintiff's person and a defendant Doe reached into an outside pocket of plaintiff's bag. *Id*. In his complaint plaintiff alleges that Challand arrested him, and clarifies that only Challand arrested him, not MacDonald or other defendants. *Id*. ¶¶ 35, 49, 50. Thus, as to plaintiff's claim for unlawful arrest, the Court finds that plaintiff has failed to state a claim against defendants MacDonald, Schuler, Pereira, McQuoid, Elder, or Hoekwater.

On a 12(b)(6) motion, the Court must accept the facts as alleged in the complaint as true. Additionally, in a *pro se* civil rights case, the Court must "construe the pleadings liberally" and "afford the petitioner the benefit of any doubt.'" *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (quoting *Bretz v. Kelman*, 773, F.2d 1026, 1027 n. 1 (9th Cir. 1985) (*en banc*)). Drawing all facts and reasonable inferences in plaintiff's favor, the Court finds that plaintiff has sufficiently pled a cause of action under the Fourth Amendment against defendant Challand. The allegations stated in plaintiff's amended complaint make it plausible that Challand did not have probable cause to arrest plaintiff. Plaintiff has alleged that he was physically blocked by defendants from exiting his chair, was having trouble walking and standing, and therefore remained seated. FAC ¶¶ 29-31. While evidence presented later in the litigation may demonstrate that plaintiff was intentionally interfering with lawful business and refused a supervisor's requests to leave such that probable cause existed for Challand to arrest plaintiff, at the pleading stage plaintiff's allegations are sufficient to withstand the motion to dismiss.[4]

---

[4] Defendants also argue that the officers had probable cause to arrest plaintiff for recording their confidential communications without their consent in violation of California Penal Code section

Defendants argue that they are entitled to qualified immunity on plaintiff's claims for unlawful arrest and excessive force. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Whether the facts alleged show the officer's conduct violated a constitutional right is the threshold question in the qualified immunity analysis. *See id.*, *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the plaintiff has alleged a violation of a constitutional right, the Court must decide "whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct. *Pearson*, 555 U.S. at 232. Here, plaintiff has alleged a violation of his Fourth Amendment rights for unlawful arrest and excessive force.

As to defendants' claim of qualified immunity for plaintiff's unlawful arrest claim, the Court asks "whether a reasonable officer could have believed that probable cause existed to arrest the plaintiff." *Franklin v. Fox*, 312 F.3d 423, 437 (9th Cir. 2002). California Penal Code section 602.1(b) provides that any person who intentionally interferes with any lawful business carried on by employees of a public agency open to the public by obstructing those attempting to carry on business and who refuses to leave the premises after being requested to leave by a supervisor of the public agency is guilty of a misdemeanor. Cal. Penal Code § 602.1(b). Plaintiff has alleged that he was surrounded by defendants, physically blocked from leaving his seat, and unable to

---

632. Section 632 "prohibits the electronic recording of any 'confidential communication' without the consent of all parties to the communication." *Medical Laboratory Management Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 816 (9th Cir. 2002) (quoting *Shulman v. Group W. Productions, Inc.*, 18 Cal. 4th 200, 234 (Cal. 1998)). Under Section 632, a "confidential communication" is confidential "if a party to that conversation has an objectively reasonable expectation that the conversation is not being overhead or recorded." *Flanagan v. Flanagan*, 24 Cal. 4th 766, 776-77 (2002); Cal. Penal Code § 652(c). Defendants assert that plaintiff has failed to allege that anyone else was present in the lobby such that the officers did not have a reasonable expectation as to a confidential conversation with plaintiff. Plaintiff has alleged in paragraph 37 of the first amended complaint that "various members of the public" were in the area and therefore heard "any conversations that occurred there." FAC ¶ 37. Accordingly, defendants' argument fails.

1  stand and walk so he remained seated and asked defendants for help. FAC ¶¶ 30-31. The Court
2  finds that based on the facts alleged, a reasonable officer would not have believed that plaintiff,
3  who was physically blocked from leaving his seat and unable to walk or stand, was refusing to
4  leave the premises.

5  Defendant Challand, the only defendant as to whom plaintiff has stated a claim for
6  unlawful arrest, is not entitled to a finding of qualified immunity at this pleading stage of the
7  litigation.

### 2. Warrantless Searches

Plaintiff alleges that defendants MacDonald, Challand, Schuler, Pereira, Elder, and McQuoid carried out unreasonable warrantless searches of his person, messenger bag, portfolio, confidential documents, confidential or privileged conversations with healthcare providers, Olympus recorder, medical records, background, and car. FAC ¶ 140.

Plaintiff claims that MacDonald and Challand searched his person and his belongings, specifically his Olympus recorder, his portfolio, his confidential correspondence, and his messenger bag. *Id*. ¶¶ 58, 35, 40, 43. Defendants argue that the search was incident to plaintiff's arrest and is therefore permissible under the Fourth Amendment. Plaintiff has sufficiently alleged that he was arrested without probable cause and the Court has found that the allegations in plaintiff's amended complaint make it plausible that he was arrested unlawfully. Plaintiff has stated a claim under the Fourth Amendment for the search incident to his unlawful arrest. *See United States v. Mota*, 982 F.2d 1384, 1387 (9th Cir. 1993) ("[T]he arrest must be both custodial and lawful to support a search incident to that arrest."). The motion is DENIED as to defendants MacDonald and Challand on this claim.

As to Schuler, plaintiff contends that he violated the Fourth Amendment by ordering a defendant Doe to search plaintiff's name in the ARIES database and by eavesdropping on plaintiff's conversation with a healthcare professional. FAC ¶¶ 44, 61. Similarly, plaintiff alleges Pereira eavesdropped on him during a medical examination. *Id*. ¶ 65. These alleged acts do not constitute a search within the meaning of the Fourth Amendment and plaintiff has not alleged that

1  Schuler or Pereira searched his person or possessions. Plaintiff has not remedied the defects of
2  these claims in his amended complaint. Accordingly, the Court GRANTS the motion to dismiss
3  plaintiff's claims as to defendants Schuler and Pereira with prejudice.

4  Plaintiff alleges McQuoid "snickered and otherwise indicated that Plaintiff's car either
5  already had been searched or was going to be searched" and that McQuoid and possibly others
6  unlawfully searched his car during his imprisonment. FAC ¶¶ 73-74. But plaintiff's amended
7  complaint also states that McQuoid stated that he could not find plaintiff's car in the adjacent
8  parking lot. *Id.* ¶ 73. These claims were previously dismissed, with leave to amend, but plaintiff
9  has not supplemented his statements with facts to support his claims. Thus, the Court must
10 GRANT the motion to dismiss this claim as to McQuoid with prejudice.

11 As to Elder, plaintiff alleges he conducted a Section 5150 evaluation of plaintiff and
12 unlawfully searched plaintiff's medical records. *Id.* ¶¶ 68-69. Accessing plaintiff's medical
13 records in conducting a medical evaluation is not a search within the meaning of the Fourth
14 Amendment. In his amended complaint plaintiff has not remedied his Fourth Amendment claim
15 against Elder, thus the motion to dismiss this claim is GRANTED as to defendant Elder with
16 prejudice.

### 3. Excessive Force

19 The Court finds that plaintiff has adequately stated a claim for excessive force under the
20 Fourth Amendment. Plaintiff has alleged that he remained seated because defendants physically
21 blocked him from exiting his chair and upon his arrest defendants grabbed his arms extremely
22 tightly while lifting him from a seated position and roughly carried him from the public lobby.
23 FAC ¶ 36. Plaintiff alleges this excessive force by Challand, MacDonald and defendant Does
24 caused him severe pain, nerve damage, scars, and deep bruises. *Id.* Plaintiff further alleges the
25 defendants tightened the handcuffs they used so much that they cut deeply into the skin around his
26 wrists and caused his hands to go completely numb and become discolored. *Id.* The Ninth Circuit
27 has explained that it "is well-established that overly tight handcuffing can constitute excessive
28 force." *Wall v. County of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004); *see also Meredith v.*

*Erath*, 342 F.3d 1057, 1063 (9th Cir. 2003). Assuming the truth of plaintiff's allegations, the Court finds plaintiff has stated a plausible claim for excessive force against defendants Challand and MacDonald.

Again, defendants argue that they are entitled to qualified immunity on plaintiff's excessive force claim. To determine whether the constitutional right was clearly established, "it is not enough that there is a generally established proposition that excessive use of force is unlawful." *Sandoval v. Las Vegas Metropolitan Police Dept.*, 756 F.3d 1154, 1161 (9th Cir. 2004). Rather, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id*. (citing *Saucier*, 533 U.S. at 202). Here, on the facts alleged, a reasonable officer would have understood that what he was doing violated plaintiff's Fourth Amendment rights. Plaintiff alleges that he told defendants that the handcuffs were causing pain and numbness in his hands, asked for medical attention, and that the handcuffs caused him severe pain, nerve damage, scars, and deep bruises. FAC ¶¶ 36, 55. Defendants are therefore not entitled to a finding of qualified immunity on plaintiff's excessive force claim. The motion is DENIED as to defendants Challand and MacDonald.

### B. First Amendment

Plaintiff alleges a violation of his First Amendment rights against all individual defendants. FAC ¶ 126. To state a claim for First Amendment retaliation, a plaintiff must show that "(1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *Pinard v. Clatskanie School Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006); *see also Skoog v. County of Clackamas*, 469 F.3d 1221, 1232 (9th Cir. 2006). The Ninth Circuit has "recognized that a retaliatory police action such as an arrest or search and seizure would chill a person of ordinary firmness from engaging in future First Amendment activity." *Ford v. City of Yakima*, 706 F.3d 1188, 1193 (9th Cir. 2013).

According to plaintiff, he engaged in conduct protected by the First Amendment, including

petitioning the government for redress of grievances, expressing his viewpoint, and gathering information about government activities by recording it. FAC ¶ 126. Plaintiff alleges defendants retaliated against him because he engaged in protected speech. *Id*. ¶ 128. Plaintiff does not specify the retaliatory action taken by defendants, but the Court presumes plaintiff complains of his arrest by defendant Challand.

In his complaint plaintiff alleges that Challand arrested him, and later clarifies that only Challand arrested him, not MacDonald or other defendants. *Id*. ¶¶ 35, 49, 50. Accordingly, the Court finds that plaintiff has failed to state a claim for First Amendment retaliation against defendant MacDonald, Schuler, Pereira, McQuoid, Elder, or Hoekwater.[5] Defendants' motion to dismiss is GRANTED as to these defendants.

As to defendant Challand, the Court finds that plaintiff has not stated a claim for First Amendment retaliation related to petitioning the government for redress of grievances or expressing his viewpoint. Plaintiff's complaint alleges that he was arrested at or about 6:26 a.m. *Id*. ¶ 35. Plaintiff further alleges that at 6:32 a.m. defendant Pereira skimmed at least part of plaintiff's report, which he states was the first time any defendant even skimmed the document. *Id*. ¶ 44. Thus, plaintiff has alleged that the supposed retaliatory action occurred *prior* to any of the defendants even skimming his report — the document which contained plaintiff's request for redress of grievances and the expression of his viewpoint. Thus, plaintiff has failed to state a claim for First Amendment retaliation for expressing his viewpoint.

Plaintiff appears to argue that he was engaged in protected speech when he recorded the conversations taking place in the CCCSO office lobby and he was arrested in retaliation for recording. In his amended complaint plaintiff alleges that Challand noticed plaintiff was actively recording on his Olympus recorder, so Challand seized and arrested plaintiff and his property. *Id*.

---

[5] In his amended complaint plaintiff alleges that Hoekwater did not keep confidential the complaint he made subsequent to his arrest. FAC ¶ 83. However, plaintiff has not alleged any adverse action taken by Hoekwater that would chill or silence a person or ordinary firmness from future First Amendment activities. *Skoog v. County of Clackamas*, 469 F.3d 1221, 1232 (9th Cir. 2006). His claim against Hoekwater therefore fails.

¶ 35.[6] The Ninth Circuit has recognized a "First Amendment right to film matters of public interest." *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995). Similarly, other circuits have held that the First Amendment protects an individual's right to film police officers performing their duties in a public place. *Gilk v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011); *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000). Here, plaintiff has alleged that he was recording police officers engaged in their duties in the public lobby of the CCCSO. FAC ¶¶ 26; 28-30; 35-36. Plaintiff has further alleged that Challand noticed he was recording "so he seized and arrested Plaintiff." *Id*. ¶ 36. Taking these facts in the light most favorable to plaintiff, as it must, the Court finds that at this point in the pleading stage, plaintiff has stated a claim against defendant Challand for retaliation under the First Amendment.

Defendants argue for qualified immunity, asserting that it was reasonable for the officers to believe they could arrest plaintiff and that the case law cited to the Court pertained to overt recording of police activities. As previously discussed, from the facts alleged, a reasonable officer would not have believed there was probable cause to arrest plaintiff under California Penal Code Section 632 as there were other persons present in the lobby, thus the officers could not have had an objectively reasonable expectation that the conversation was not being overhead or recorded. Additionally, plaintiff has alleged that the recording devices he used "were in plain view." FAC ¶¶ 26, 37. Thus, defendants' suggestion that plaintiff was recording covertly fails. It is clearly established law that officers may be filmed while carrying out their official duties. *See Fordyce*, 55 F.3d at 439; *see also Adkins v. Limtiaco*, 537 Fed. Appx. 721, 722 (9th Cir. 2013). Defendants have not met their burden to demonstrate defendant Challand is entitled to qualified immunity. The motion to dismiss this claim as to defendant Challand is DENIED.

///

---

[6] Defendants again cite California Penal Code § 632 to argue that plaintiff was not engaged in protected activity, because plaintiff was violating California law in recording confidential communications without their consent. As previously discussed, defendants' assertion that plaintiff violated Section 632 fails.

**C. Fourteenth Amendment**

Plaintiff again alleges violations of his rights under the Fourteenth Amendment. In his amended complaint, plaintiff specifies that his claims are based on: (1) lack of medical care; (2) the conditions of his confinement; and (3) denial of his equal protection rights due to his disability. FAC at 35-38.

To succeed on a claim based on medical treatment, a plaintiff must show "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). First, plaintiff must allege facts that "failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain," and that "defendant's response to the need was deliberately indifferent." *Jett v. Penner*, 439 F.3d 1091, 1086 (9th Cir. 2006) (citations omitted). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). A prison official acts with deliberate indifference when he knows of and disregards "an excessive risk to inmate health; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Indifference may appear when prison official deny, delay or intentionally interfere with medical treatment." *Jett*, 439 F.3d at 1096 (citations omitted).

Taking the facts in the light most favorable to plaintiff, the Court finds that he has stated a claim for lack of medical care against defendant Pereira. Plaintiff's complaint alleges that he made repeated pleas for medical attention, that he told Pereira that he "was having a medical emergency and that the handcuffs were causing pain on his wrists and numbness in his hands" but Pereira refused every request. FAC ¶ 55. Plaintiff alleges he was "shaking and crying from pain" but all defendants refused his repeated requests to treat the wounds on his wrists caused by the handcuffs. *Id*. ¶ 59. Plaintiff further alleges that Pereira eavesdropped on a conversation in which healthcare professionals confirmed plaintiff needed immediate emergency medical attention but defendants prevented his transfer to a hospital for treatment. *Id*. ¶ 65. Contrary to defendants' assertions, plaintiff has alleged that Pereira knew that plaintiff needed immediate medical attention and disregarded this serious medical need. Accordingly, the Court cannot say that plaintiff has

13

failed to state a claim for lack of medical care as to defendant Pereira.

Plaintiff next alleges the conditions of his confinement violated the Fourteenth Amendment. *Id*. ¶ 161.  To state a claim a claim for unconstitutional conditions of confinement, plaintiff must allege that defendants deprived him of the "minimal civilized measure of life's necessities" and that defendants acted with deliberate indifference to an excessive risk to his health or safety.  *Grenning v. Miller-Stout*, 739 F.3d 1235, 1238 (9th Cir. 2014) (quoting *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002)).  Plaintiff alleges that he was placed in "a frigid, dirty, smelly, overcrowded group cell with bright lights, a blaring television, no potable water, no open seat and no place to sleep." *Id*. ¶ 63.  He claims that defendants knew the conditions created a substantial risk of serious harm to him and disregarded that risk; plaintiff specifies that he begged over and over for water, which he needed due to his serious medical needs, but no one did anything to help him.  *Id*. ¶¶ 63, 163.  As a result, plaintiff's pain and health condition worsened as did his risk of serious harm.  *Id*.  Taking the facts alleged as true and drawing all reasonable inferences in plaintiff's favor, the Court finds that plaintiff has sufficiently alleged a claim as to the conditions of his confinement ad to defendants Challand, MacDonald, Schuler, Pereira and McQuoid.[7]

Plaintiff also alleges that defendants discriminated against him based upon his disability in violation of the Fourteenth Amendment. *Id*. ¶ 171.  To state a claim under § 1983 for violation of the Equal Protection clause of the Fourteenth Amendment, plaintiff must allege that the defendants acted in a discriminatory manner and that the discrimination was intentional.  *Reese v. Jefferson School Dist. No. 14J*, 208 F.3d 736, 740 (9th Cir. 2000).  Here, plaintiff states that defendants "acted with an intent or purpose to discriminate against Plaintiff based upon his disability," but he has not alleged facts to support the allegation that defendants acted in a discriminatory manner or that it these acts were intentional.  Thus, plaintiff has failed to state a claim for violation of the Equal Protection clause.

The Court finds that plaintiff has sufficiently alleged Fourteenth Amendment claims based

---

[7] Plaintiff asserts this claim against defendants generally, but defendants Elder and Hoekwater do not appear to have anything to do with this part of plaintiff's complaint.

14

on lack of medical care against defendant Pereira; and claims based on the conditions of his confinement as to defendants Challand, MacDonald, Schuler, Pereira and McQuoid. Thus, the motion is DENIED as to these claims. The motion is GRANTED as to plaintiff's Equal Protection/disability claim, with prejudice.

## II.     42 U.S.C. § 1985(2) and § 1985(3)

Plaintiff has asserted claims under 42 U.S.C. §§ 1985(2) and (3) against all individual defendants. FAC ¶¶ 172; 179. In his complaint plaintiff cites to the second clause of 1985(2), which concerns access to state or territorial courts. FAC ¶ 174; *Portman v. County of Santa Clara*, 995 F.2d 898, 909 (9th Cir. 1993). Plaintiff's complaint does not allege that defendants have obstructed justice in state court (or any court) and the Court cannot envision additional facts plaintiff could plausibly allege to successfully state a claim pursuant to section 1983(2). Thus, the Court must GRANT defendants' motion to dismiss plaintiff's claim under § 1985(2) with prejudice.

42 U.S.C. § 1985(3), the Ku Klux Klan Act of 1871, "was enacted by the Reconstruction Congress to protect individuals — primarily blacks — from conspiracies to deprive them of their legally protected rights." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992). To state a claim under § 1985(3) a plaintiff must allege: "the existence of a conspiracy to deprive the plaintiff of the equal protection of the laws; an act in furtherance of the conspiracy; and a resulting injury." *Scott v. Ross*, 140 F.3d 1275, 1284 (9th Cir. 1998) (citing *Sever*, 978 F.2d at 1536)). The deprivation of plaintiff's rights must be motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Sever*, 978 F.2d at 1536 (citations omitted). In his Fourteenth Amendment claim, plaintiff alleges that defendants knew he was disabled, conspired together, and "acted with an intent or purpose to discriminate against Plaintiff based on his disability." FAC ¶¶ 168-171. Defendants argue plaintiff's allegations must fail because plaintiff has failed to allege any facts tying any adverse actions by defendants to plaintiff's alleged disability. In his opposition, plaintiff directs the Court to paragraphs 32 and 33 of his amended complaint as statements of invidious discriminatory animus

15

and intent on the basis of plaintiff's disability. Specifically, plaintiff cites a statement purportedly made by Challand: "I don't care what you have! I'm not giving you your free Obamacare!" *Id.* ¶ 33. Plaintiff has not alleged facts that support his allegation that defendants agreed to a conspiracy amongst themselves, nor has he alleged facts that the alleged conspiracy was the result of discriminatory animus. Plaintiff alleged claims of conspiracy is his initial complaint and has already been granted leave to amend his claims. Accordingly, the Court must GRANT defendants' motion to dismiss plaintiff's 1985(3) claim with prejudice.

### III.     42 U.S.C. § 1986

Plaintiff asserts a claim under 42 U.S.C. § 1986 against some currently unidentified defendants who knew of wrongs conspired to be done in violation of 42 U.S.C. § 1985. FAC ¶¶ 187, 189. For the foregoing reasons, plaintiff's claims under 42 U.S.C. § 1985 fail, and thus his dependent claim under § 1986 must similarly fail. Defendant's motion as to this claim is GRANTED with prejudice.

### IV.     18 U.S.C. § 1030

Plaintiff alleges that defendant Challand and some unidentified individual defendants have violated 18 U.S.C. § 1030. FAC ¶ 191. Specifically, plaintiff cites § 1030(4), which applies to anyone who "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value . . ." 18 U.S.C. § 1030(4). Plaintiff has not specified what act gives rise to this claim, the amended complaint contains no facts pertaining to computers, and plaintiff has not explained to the Court the grounds for his claim in his opposition. Plaintiff has failed to allege facts that any defendant accessed "a protected computer without authorization" and therefore has failed to state a claim under 18 U.S.C. § 1030. The Court must therefore GRANT defendant's motion to dismiss as to this claim with prejudice.

16

## V. 42 U.S.C. § 12132

Plaintiff alleges a violation of 42 U.S.C. § 12132 against defendants Challand, MacDonald, Schuler, Pereira, Elder, McQuoid, and some Does. FAC ¶ 357. To state a claim under Title II of the Americans with Disabilities Act, a plaintiff must allege:

> (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

*Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002) (citing *Weinreich v. L.A. County Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997)).

With respect to the first element, the ADA definition of "disability" is: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(2). Here, plaintiff alleges only that he is has a disability, that defendants excluded him from participation in and denied him the full and equal benefits of the services, programs, and activities of the Defendant Contract Costa, and discriminated against him because of his disabilities. FAC ¶ 360. Plaintiff specifically cites § 12102(2)(A), but he has not specified what "physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1). Instead he states only that he is "disabled" and has "disabilities." FAC ¶¶ 1, 32, 359. Plaintiff must allege facts to support his allegation that he has a disability that substantially limit one or more of his major life activities. Plaintiff alleged wrongdoing under § 12132 in his initial complaint and has not remedied the defects of his initial claim in this amended complaint. Therefore, the claim is DISMISSED with prejudice.

## VI. 42 U.S.C. § 1983 *Monell* Liability

Defendants move to dismiss plaintiff's *Monell* claim against the County of Contra Costa. "Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." *Connick v. Thompson*, 131 S.Ct. 1350,

1359 (2011) (quoting *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978)). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.* The Ninth Circuit has explained that the pleading requirements for civil actions, including *Monell* claims, require that plaintiff's allegations "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012). Plaintiff's factual allegations "must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.* (citations omitted).

Here, plaintiff has alleged that the County of Contra Costa has policies and customs of indifference to misconduct by law enforcement employees by failing to properly investigate complaints of misconduct and failing to discipline employees. FAC ¶ 98. Plaintiff further alleges that the County of Contra Costa "maintains and supports policies and practices of extortion, harassment, intimidation, retaliation, excessive force, false arrests, defamation, delaying and/or denying medical attention and other wrongs that harm people it targets, including Plaintiff." *Id.* ¶ 101. Plaintiff then lists fifteen examples, including the deaths of specific persons while imprisoned by the County of Contra Costa and the "Dirty DUI" scandal that resulted in numerous false arrests. *Id.* These allegations are sufficiently specific to identify an alleged policy or custom to provide fair notice to defendants. *See Haines v. Brand*, No. 11-cv-1335-EMC, 2011 WL 6014459, at *5 (N.D.Cal. Dec. 2, 2011); *see also Von Haar v. City of Mountain View*, No. 10-cv-02995-LHK, 2011 WL 782242, at *5 n.2 (N.D.Cal. Mar. 1, 2011). Plaintiff's claims against the County of Contra Costa are not dismissed at this time, as it is plausible that plaintiff's claims — if proven to be constitutional violations — were part of a practice or custom of the County. The motion to dismiss is DENIED as to this claim.

### VII. Plaintiff's State Law Claims

Plaintiff has asserted numerous state law tort claims against defendants. Defendants move

18

1    to dismiss these state law claims based on plaintiff's failure to comply with the California
2    Government Claims Act. Before filing suit on tort claims against certain state actors, a plaintiff
3    must file a government claim pursuant to the California Government Claims Act. Cal. Gov. Code.
4    § 810 *et seq*. A plaintiff must present this claim "not later than six months after the accrual of the
5    cause of action." Cal. Gov. Code. § 911.2.

6    Here, plaintiff presented his claim on August 5, 2014 — more than six months after the
7    accrual of the cause of action. Docket No. 91-2, Ex. A. On August 7, 2014, plaintiff's claim was
8    returned to him because he failed to present the claim within the time allowed by law. Docket No.
9    91-4, Ex. C. Plaintiff filed a petition with the Board of Supervisors of Contra Costa County for
10   leave to present a late claim, but this was denied on September 16, 2014. Docket No. 91-5, Ex.
11   D. Pursuant to California Government Code 946.6, plaintiff could have — within six months
12   from the denial of his September 16, 2014 petition — filed a petition seeking relief from the
13   claims presentation requirement. Cal. Gov. Code 946.6. Plaintiff has not provided the Court with
14   evidence that he filed such a petition, nor has he presented any argument regarding his late filing.
15   Accordingly, the Court GRANTS the motion to dismiss plaintiff's state law claims with prejudice.

## CONCLUSION

For the reasons stated above the Court hereby DENIES the motion to dismiss plaintiff's Fourth Amendment/unlawful arrest claims against defendant Challand; and DENIES the motion to dismiss the Fourth Amendment/warrantless search and Fourth Amendment/excessive force claims against defendants MacDonald and Challand. The motion is GRANTED as to all other defendants and as to the remaining Fourth Amendment claims, with prejudice.

The Court DENIES the motion to dismiss the First Amendment/retaliation claim against defendant Challand. The motion is GRANTED as to MacDonald, Schuler, Pereira, McQuoid, Elder, and Hoekwater with prejudice.

The Court DENIES the motion to dismiss the Fourteenth Amendment/medical care claims as to defendant Pereira and DENIES the motion to dismiss the Fourteenth Amendment/conditions of confinement claims as to defendants Challand, MacDonald, Schuler, Pereira and McQuoid. As

to all other defendants, the motion is GRANTED with prejudice. The motion to dismiss the Fourteenth Amendment/equal protection claim is GRANTED as to all defendants with prejudice.

The Court DENIES the motion as to plaintiff's *Monell* liability claim.

The motion is GRANTED with prejudice as to all defendants on plaintiff's claims under 42 U.S.C. §1985(2) and (3); 42 U.S.C. § 1986; and 18 U.S.C. § 1030.

The motion is GRANTED with prejudice as to all defendants on plaintiff's claims under 42 U.S.C. § 12132 and plaintiff's state law claims.

**IT IS SO ORDERED.**

Dated: May 6, 2015

_____
SUSAN ILLSTON
United States District Judge